JOHN W. HUBER, United States Attorney (#7226)
ROBERT A. LUND, Assistant United States Attorney (#9579)
JASON R. BURT, Assistant United States Attorney (#11200)
TYLER L. MURRAY, Assistant United States Attorney (#10308)
BROCK R. BELNAP, Special Assistant United States Attorney (#6179)
Attorneys for the United States of America
185 South State Street, Ste. 300 • Salt Lake City, Utah 84111
Telephone: (801) 524-5682 • Facsimile:  (801) 325-3387

*FILED
U.S. DISTRICT COURT
2016 FEB 17 ⊃ 2: 57
DISTRICT OF UTAH
BY:_____
DEPUTY CLERK*

**SEALED**

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> LYLE STEED JEFFS, <br> SETH STEED JEFFS, <br> JOHN CLIFTON WAYMAN, <br> KIMBALL DEE BARLOW, <br> NEPHI STEED ALLRED, <br> WINFORD JOHNSON BARLOW, <br> RULON MORMON BARLOW, <br> RUTH PEINE BARLOW, <br> HYRUM BYGNAL DUTSON, <br> KRISTAL MELDRUM DUTSON, and <br> PRESTON YATES BARLOW, <br><br> Defendants. | **INDICTMENT** <br><br> 2: 16 C R 82  TS <br><br> VIOLS. <br> 7 U.S.C. § 2024(b)&(c) & 18 U.S.C. §§ 371, CONSPIRACY TO COMMIT SUPPLEMENTAL NUTRITION ASSISTANCE PROGRAM BENEFITS FRAUD; <br> 18 U.S.C. § 1956(h), <br> CONSPIRACY TO COMMIT MONEY LAUNDERING; <br> 21 U.S.C. § 853, <br> CRIMINAL FORFEITURE. |

The Grand Jury alleges:

## INTRODUCTION

At all times relevant to this Indictment:

1.  The United States Department of Agriculture (USDA) Food and Nutrition Service (FNS)

operated the Supplemental Nutrition Assistance Program (SNAP).  SNAP provides financial

assistance to low income individuals and families to purchase food products.

2.   USDA-FNS delegates authority to individual states to determine eligibility and to certify individual SNAP recipients who qualify for the program.  Persons in need, who wish to obtain SNAP benefits, apply with the appropriate state agency.  Approved applicants receive an Electronic Benefits Transaction card (EBT card), similar to a bank debit card, linked to a SNAP account.  The EBT cards possess a magnetic strip containing electronically encoded information regarding the particular recipient and the dollar amount of benefits awarded.  When a recipient presents a SNAP EBT card to a retailer to pay for eligible food items, the retailer debits funds from the recipient's available SNAP benefits.

3.   SNAP benefits apply only to the purchase of eligible food items.  Recipients of SNAP benefits cannot exchange their benefits for non-food items, household goods, or cash.  Only members of the recipient household may use program benefits, and the application for benefits must list all members of the household who will receive benefits.  Recipients must agree to the requirements and limitations of the program on the application for benefits.

4.   Redemption of SNAP benefits occurs in a manner similar to a credit or debit card transaction, either by manually entering the account information or by swiping the EBT card through a particular device at the store.  The SNAP benefits recipient then enters a personal identification number (PIN) in the device's PIN pad to complete the transaction.

5.   Only stores authorized by USDA-FNS may redeem SNAP benefits. To become eligible to redeem SNAP benefits, a retailer must complete, sign and submit an "Application for Stores," Form FNS 252.  USDA-FNS then issues a SNAP authorization number to the approved store. The retailer subsequently receives reimbursement for redemptions via an electronic funds transfer directly into an authorized bank account designated by the retailer.  A store operator participating as a SNAP

retailer must agree on the "Application to Participate" that he or she understands the proper use and redemption of SNAP benefits and will abide by the requirements of the program.

6.  The Fundamentalist Church of Jesus Christ of Latter-day Saints (FLDS church) dissented from the Church of Jesus Christ of Latter-day Saints (LDS church), after the LDS church renounced the practice of polygamy.   In the 1930's, FLDS members began settling an area known as "Short Creek."  The Short Creek community encompasses the incorporated cities of Hildale, Utah and Colorado City, Arizona, which straddle the Utah-Arizona border.  Although separately incorporated in different states, the two cities operate as a single FLDS community.  The two cities share law enforcement officers and coordinate municipal activities.  Approximately 6,000 people reside in the Short Creek area.

7.  In 2002, Warren Jeffs succeeded his father, Rulon Jeffs, as prophet and leader of the FLDS church.  As the Bishop of the Short Creek Stake, Warren Jeffs' brother, Lyle Jeffs, leads a congregation of FLDS members in Colorado City, Arizona and Hildale, Utah.  In the physical absence of Warren Jeffs, Lyle Jeffs handles the daily affairs of the organization, including its financial matters.  Another of Warren Jeffs' brothers, Seth Jeffs, also leads a congregation of FLDS members as the Bishop in rural Custer County, South Dakota.

8.  Starting in approximately 2011, FLDS leaders, including Lyle Jeffs, instituted the "United Order" within its ranks.  Adherents to the United Order promise to donate their lives and all of their material substance to the church.  Participation in the United Order purports to constitute the highest level of worthiness and spiritual preparedness in the church.  Devout FLDS members aspire to eligibility in the United Order. Adherents to the United Order must donate all of their material assets to the FLDS Storehouse, a communal clearinghouse charged with collecting and disbursing commodities to the community.  United Order policy also dictates that members must obtain their

food and household commodities solely through the FLDS Storehouse. A large percentage of FLDS members in the Short Creek area receive SNAP benefits, amounting to millions of dollars in benefits per year.

9. The FLDS leadership controls several local businesses in the Short Creek area which serve as extensions of the FLDS Storehouse. Two such businesses are the Meadowayne Dairy Store (hereinafter "Meadowayne") and Vermillion Cliffs Produce (hereinafter "Vermillion"). Meadowayne and Vermillion are small convenience stores. However, both stores engaged in abnormally large and frequent SNAP transactions, which rival and even surpass those sales generated by much larger stores like Walmart and Costco.

10. Between 2011 and 2013, FLDS leaders directed members to divert their SNAP benefits to the FLDS Storehouse. These leaders, including Lyle Jeffs, Seth Jeffs, John Wayman and Kimball Barlow, held meetings in which they disseminated Storehouse protocols. The protocols dictated methods for diverting SNAP benefits to the FLDS Storehouse. These leaders also provided instruction on how to avoid suspicion and detection by the government.

11. Lyle Jeffs, Seth Jeffs, John Wayman and Kimball Barlow directed members to divert their SNAP benefits to the church by purchasing food items at Meadowayne and Vermillion and physically transporting those items to the Storehouse for donation or by converting SNAP benefits directly to fungible assets by swiping EBT cards at Meadowayne or Vermillion without the exchange of any food products.

12. Third party payment processors then deposited the SNAP proceeds into the accounts of Meadowayne and Vermillion. The managers at Meadowayne and Vermillion transferred these funds to companies acting as a front for the FLDS Storehouse, Quality Wholesale Distributors (hereinafter "Quality"), Prime Wholesale Supply (hereinafter "Prime"), and Products Unlimited, thereby

commingling SNAP fraud proceeds with other funds.

13. The front companies paid no payroll expenses for employees, utilized no advertising, established no internet presence, and incurred only nominal overhead costs. Additionally, Quality reported only minimal sales revenues to state sales tax authorities, despite receiving millions of dollars in payments from Meadowayne and Vermillion. Transferring SNAP proceeds to Quality, Prime, and Products Unlimited concealed and disguised the nature, location, source, ownership and control of the proceeds corresponding to the fraudulent transactions. Consequently, FLDS leaders maintained control of SNAP benefits from the fraud's initial directive to members, through Meadowayne and Vermillion's facilitation of the fraud, and to the concealment of the fraud by use of the front companies. The leaders, including Lyle Jeffs, Seth Jeffs, John Wayman and Kimball Barlow, then directed the use of those funds for purposes other than the purchase of eligible food products for authorized recipients.

14. Additionally, the leaders directed others to use the SNAP fraud proceeds diverted to Quality, Prime, and Products Unlimited to buy food and other items for distribution among church members, including individuals who were not authorized to receive SNAP benefits. These distributions encouraged the further diversion of SNAP funds and so promoted the scheme and enabled it to continue.

15. Seth Jeffs acted as a signator on the Quality bank account into which Meadowayne's operators transferred SNAP fraud proceeds. He also possessed a credit card issued in his name which Quality used to purchase goods for the Storehouse.

16. John Clifton Wayman was a member of the FLDS church and a participant in the United Order. In 2012, he acted as the FLDS Bishop of the Short Creek Stake congregation. As indicated above, he disseminated protocols for fraudulently diverting SNAP benefits to the FLDS Storehouse, and he

ordered the disposition of SNAP funds for unlawful purposes. After collecting EBT cards from legitimate beneficiaries, he provided those cards to another individual and ordered that person to use SNAP funds to purchase food and goods for non-eligible persons.

17. Kimball Dee Barlow was a member of the FLDS church and a participant in the United Order. He managed the FLDS Storehouse, the central location to gather and distribute food, goods, and commodities to the FLDS community. He disseminated protocols for fraudulently diverting SNAP benefits to the FLDS Storehouse. He possessed signatory authority for bank accounts corresponding to the front corporations, Quality, Prime, and Products Unlimited. Through financial transactions involving these accounts, Kimball Barlow disposed of SNAP funds to unintended and ineligible beneficiaries and for unapproved purposes.

18. Nephi Steed Allred was a member of the FLDS church and a participant in the United Order. Nephi Allred participated at meetings in which FLDS leaders directed members to fraudulently divert their SNAP benefits to the FLDS Storehouse. In order to conceal and disguise the involvement of the FLDS Storehouse, he orchestrated the organization of Quality Wholesale Distributors. Thereafter, knowing that the activity of the business facilitated the unlawful diversion of SNAP funds to the FLDS church, he served as the general manager of Quality and supervised the daily operations of the business. He possessed signatory authority for a bank account corresponding to Quality.

19. Winford Johnson Barlow was a member of the FLDS church and a participant in the United Order. Between May of 2012 and April of 2015, Winford Barlow acted as the president of Meadowayne. On May 23, 2013, Winford Barlow signed an Application for Stores on behalf of Meadowayne certifying that he agreed with the conditions of participation and agreeing to comply with all statutory and regulatory requirements of the SNAP program. Winford Barlow participated

at meetings in which FLDS leaders directed members to fraudulently divert their food stamp benefits to the FLDS Storehouse. He possessed signatory authority for several of Meadowayne's bank accounts, and he signed checks on those accounts, including payroll checks to Meadowayne employees.

20. Rulon Mormon Barlow was a member of the FLDS church and a participant in the United Order. Mormon Barlow participated at meetings in which FLDS leaders directed members to fraudulently divert their SNAP benefits to the FLDS Storehouse. Knowing that the activity of the business facilitated the unlawful diversion of SNAP funds to the FLDS church, Mormon Barlow served as the general manager of Meadowayne and supervised the daily operations of the business. He possessed signatory authority for Meadowayne's bank accounts, and he signed checks on those accounts. With the intent, in whole or in part, to conceal and disguise the nature, location, source, ownership, and control of the funds, Mormon Barlow transferred SNAP fraud proceeds to accounts associated with Quality.

21. Ruth Peine Barlow was a member of the FLDS church, she was a participant in the United Order, and she was married to Rulon Mormon Barlow. She participated at meetings in which FLDS leaders directed members to fraudulently divert their food stamp benefits to the FLDS Storehouse. Knowing that the activity of the business facilitated the unlawful diversion of SNAP funds to the FLDS church, she assisted Mormon Barlow in the daily operations of Meadowayne. On many occasions, while working the registers at Meadowayne, she actively participated in fraudulent transactions involving SNAP funds. She also possessed signatory authority for Meadowayne's bank accounts, and she signed checks on those accounts. With the intent, in whole or in part, to conceal and disguise the nature, location, source, ownership, and control of the funds, Ruth Barlow signed checks transferring SNAP fraud proceeds from Meadowayne to Quality, Prime, and Products

Unlimited.

22. Hyrum Bygnal Dutson was a member of the FLDS church and a participant in the United Order. Hyrum Dutson participated at meetings in which FLDS leaders directed members to fraudulently divert their food stamp benefits to the FLDS Storehouse. Knowing that the activity of the business facilitated the unlawful diversion of SNAP funds to the FLDS church, Hyrum Dutson served as the general manager of Vermillion Cliff's Produce, and he supervised the daily operations of the business. He possessed signatory authority for Vermillion's bank accounts, and he signed checks on those accounts. With the intent, in whole or in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds, Hyrum Dutson transferred SNAP fraud proceeds to accounts associated with Quality and Products Unlimited.

23. Kristal Meldrum Dutson was a member of the FLDS church, she was a participant in the United Order, and she was married to Hyrum Dutson. Kristal Dutson participated at meetings in which FLDS leaders directed members to fraudulently divert their food stamp benefits to the FLDS Storehouse. On June 8, 1999, Kristal Dutson signed an Application for Stores certifying her understanding of the requirements of the food stamp program. Thereafter, knowing that the activity of the business facilitated the unlawful diversion of SNAP funds to the FLDS church, Kristal Dutson assisted Hyrum Dutson in the daily operations of Vermillion. Kristal Dutson also possessed signatory authority for Vermillion's bank accounts, and she signed checks on those accounts. With the intent, in whole or in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds, Kristal Dutson signed checks transferring SNAP fraud proceeds from Vermillion to Quality.

24. Preston Yates Barlow was a member of the FLDS church and a participant in the United Order. He participated at meetings in which FLDS leaders directed members to fraudulently divert their

food stamp benefits to the FLDS Storehouse.  In approximately October of 2015, knowing that the activity of the business facilitated the unlawful diversion of SNAP funds to the FLDS church, he took over managerial control of Meadowayne and obtained signatory authority over Meadowayne's bank accounts. With the intent, in whole or in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds, he transferred SNAP fraud proceeds to Quality and Prime.

## OBJECT OF THE CONSPIRACY

25. As set forth in the Introduction above, the Grand Jury alleges that the defendants participated in a conspiracy to defraud the Supplemental Nutrition Assistance Program.  The object of the conspiracy entailed diverting SNAP proceeds from authorized beneficiaries to leaders of the FLDS church for use by ineligible beneficiaries and for unapproved purposes.

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

26. At various times between 2011 and 2015, the defendants and other co-conspirators engaged in the following acts in furtherance of the scheme to defraud:

27. In January and February of 2011, at the Leroy Sunderland Johnson meetinghouse, in Colorado City, Arizona, FLDS leaders, including Lyle Jeffs, initiated the United Order of Short Creek, requiring members to donate all of their material possessions to the FLDS church.

28. Between on or about mid-2011 and the date of this indictment, at various locations throughout the Short Creek community, FLDS leaders, including Lyle Jeffs, Seth Jeffs, John Wayman and Kimball Barlow, directed FLDS members to unlawfully divert their SNAP benefits to the FLDS Storehouse through FLDS controlled businesses, including Meadowayne and Vermillion.  For example, on or about December 12, 2011, at the Leroy Sunderland Johnson meetinghouse, in Colorado City, Arizona, Lyle Jeffs issued that directive.  At that same meeting, Seth Jeffs and

Kimball Barlow also gave instruction on how to divert SNAP benefits to the FLDS Storehouse.

29. Between on or about mid-2011 and the date of this indictment, FLDS members transferred their SNAP benefits to FLDS controlled stores without receiving eligible food products at the time of the transactions. For example, on October 16, 2015, an FLDS member with the initials S.R. conducted a SNAP transaction for $800 at Meadowayne without receiving any food products.

30. Between on or about mid-2011 and the date of this indictment, FLDS members also purchased food items from FLDS controlled stores using SNAP funds and delivered those items to the FLDS Storehouse for redistribution. For example, on November 14, 2015, an FLDS member with the initials S.B. purchased $511 worth of food products from Meadowayne using SNAP funds. Instead of keeping those food items for use by eligible members of her household, S.B. delivered those items to the FLDS Storehouse for redistribution.

31. On or about March 23, 2011, Nephi Allred, at the direction of Lyle Jeffs, instructed a surrogate to organize Quality Wholesale Distributors in Hildale, Utah, in order to act as a front company for the FLDS Storehouse.

32. On or about March 2012, in Hildale, Utah, knowing that it constituted an unapproved use and transfer of SNAP benefits, John Wayman collected EBT cards from legitimate beneficiaries, provided those cards to another individual, and directed that other person to use SNAP funds to purchase food and goods for non-eligible persons.

33. Between on or about mid-2011 and the date of this indictment, managers of Meadowayne and Vermillion transferred SNAP fraud proceeds to Quality. For example, on August 27, 2013, Mormon Barlow signed a check for $15,000 to Quality, drawn on Meadowayne's Wells Fargo bank account. On or about March 17, 2015, Ruth Barlow signed a check for $24,489 to Quality drawn on Meadowayne's Wells Fargo bank account. On or about November 24, 2015, Preston Barlow signed

a check for $2,000 to Quality drawn on Meadowayne's Wells Fargo bank account.  On or about

November 16, 2011, Hyrum Dutson signed a check for $18,520 to Quality drawn on Vermillion's

American West Bank account.  On or about December 8, 2011, Kristal Dutson signed a check for

$5,000 to Quality drawn on Vermillion's American West Bank account.

34. Between April 7, 2015 and this date of the indictment, Ruth Barlow and Preston Barlow

transferred SNAP fraud proceeds from Meadowayne's bank account to an account associated with

Prime Wholesale Supply.  For example, on or about April 20, 2015, Ruth Barlow signed a check for

$22,685 to Prime drawn on Meadowayne's Wells Fargo bank account.  On or about December 1,

2015, Preston Barlow signed a check for $35,237 to Prime drawn on Meadowayne's Wells Fargo

bank account.

35. On or about September of 2011 and continuing thereafter, managers of the FLDS controlled

businesses transferred SNAP fraud proceeds to Products Unlimited.  For example, on or about July

7, 2015, Kimball Barlow signed a check for $10,984 to Products Unlimited drawn on Prime's Chase

account.  On or about March 4, 2015, Kimball Barlow also signed a check for $11,024 to Products

Unlimited drawn on Quality's Chase account.  On or about December 16, 2014, Ruth Barlow signed

a check for $31,148 to Products Unlimited drawn on Meadowayne's Wells Fargo account. On or

about December 14, 2014, Hyrum signed a check for $11,202 to Products Unlimited drawn on

Vermillion's American West Bank account.

36. Between May 5, 2015 and the date of this indictment, Kimball Barlow transferred SNAP fraud

proceeds from Prime to Quality.  For example, on or about June 18, 2015, Kimball Barlow signed a

check for $6,228 to Quality drawn on Prime's Chase account.

37. In contravention of the controlling legal authorities, ineligible persons used SNAP funds.  For

example, on October 9, 2015, an FLDS member with the initials G.J. conducted a SNAP funds

transaction in the amount of $914 using the EBT card corresponding to N.J. As G.J. was not an authorized beneficiary from N.J.'s household and because G.J obtained no food items from the store, G.J. used the SNAP funds unlawfully.

38. SNAP fraud proceeds also financed ineligible purchases. For example, on or about March 12, 2015, using SNAP fraud proceeds, Kimball Barlow signed a check for $16,978 to Orchid's Paper Products Company, drawn on the Quality Chase account, for the purchase of paper products. During the period May 31, 2013 through September 22, 2014, using SNAP fraud proceeds, Ruth Barlow signed 5 checks totaling $13,561, made payable to John Deere Financial, drawn from two of Meadowayne's Wells Fargo accounts, for installment payments on a 2013 John Deere model 524K loader tractor. Winford Barlow signed the loan contract as the President of Meadowayne Dairy. During the period February 12, 2013 through September 10, 2015, using SNAP fraud proceeds, Ruth Barlow signed 16 checks totaling $30,236, drawn on two Meadowayne accounts, payable to Ford Motor Credit for installment payments on a 2012 Ford F-350. Winford Barlow purchased the vehicle on or about September 29, 2012.

## COUNT 1
### 18 U.S.C. § 371
### (Conspiracy to Commit SNAP benefits fraud)

39. The Grand Jury realleges the allegations of the Introduction portion of this Indictment as though fully set forth herein.

40. Beginning on a date unknown to the Grand Jury, but not later than September 1, 2011 and continuing through at least this date of the indictment, in the Central Division of the District of Utah and elsewhere,

LYLE STEED JEFFS,
SETH STEED JEFFS,
JOHN CLIFTON WAYMAN,
KIMBALL DEE BARLOW,

NEPHI STEED ALLRED
WINFORD JOHNSON BARLOW,
RULON MORMON BARLOW,
RUTH PEINE BARLOW,
HYRUM BYGNAL DUTSON,
KRISTAL MELDRUM DUTSON, and
PRESTON YATES BARLOW,

defendants herein, did knowingly and intentionally combine, conspire, confederate, and agree among themselves and with others known and unknown to the Grand Jury to commit the following offenses against the United States:

a) Knowingly using, transferring, acquiring and possessing Supplemental Nutrition Assistance Program ("SNAP") benefits, valuing $5,000 or more, in any manner contrary to the governing statute and regulations, in violation of 7 U.S.C. § 2024(b); and

b) Knowingly presenting and causing to be presented for payment and redemption, SNAP benefits valuing $100.00 or more, knowing the same to have been received, transferred, and used in any manner in violation of the governing statute regulations, in violation of 7 U.S.C. § 2024(c);

All in violation of 18 U.S.C. § 371.

## COUNT 2
### 18 U.S.C. § 1956(h)
### (Conspiracy to Commit Money Laundering)

41. The Grand Jury realleges the allegations of the Introduction portion of this Indictment as though fully set forth herein.

42. Beginning on a date unknown to the Grand Jury, but not later than September 1, 2011 and continuing through at least the date of this indictment, in the Central Division of the District of Utah and elsewhere,

LYLE STEED JEFFS,
SETH STEED JEFFS,
JOHN CLIFTON WAYMAN,
KIMBALL DEE BARLOW,
NEPHI STEED ALLRED,
WINFORD JOHNSON BARLOW,
RULON MORMON BARLOW,
RUTH PEINE BARLOW,
HYRUM BYGNAL DUTSON,
KRISTAL MELDRUM DUTSON, and
PRESTON YATES BARLOW,

defendants herein, did knowingly and intentionally combine, conspire, confederate, and agree among

themselves and with others known and unknown to the Grand Jury to commit offenses against the

United States:

a) Knowingly conducting and attempting to conduct financial transactions affecting interstate

   commerce and foreign commerce, which transactions involved the proceeds of specified

   unlawful activity, that is, Supplemental Nutrition Assistance Program Benefits Fraud, in

   violation of 7 U.S.C. § 2024(b), knowing that the transactions were designed in whole or in

   part to conceal and disguise the nature, location, source, ownership, and control of the

   proceeds of specified unlawful activity, and that while conducting and attempting to conduct

   such financial transactions, knowing that the property involved in the financial transactions

   represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C.

   § 1956(a)(1)(B)(i); and

b) Knowingly engaging and attempting to engage, in monetary transactions by, through or to a

   financial institution, affecting interstate and foreign commerce, in criminally derived

   property of a value greater than $10,000, that is transfer the proceeds of Supplemental

   Nutrition Assistance Program Benefits Fraud, in violation of 7 U.S.C. § 2024(b), such

   property having been derived from a specified unlawful activity, that is, Supplemental

Nutrition Assistance Program Benefits Fraud, in violation of 18 U.S.C. § 1957.

All in violation of 18 U.S.C. § 1956(h)

## NOTICE OF INTENT TO SEEK FORFEITURE

Pursuant to 7 U.S.C. § 2024(f), upon conviction of conspiracy to commit Supplemental Nutrition Assistance Program Benefits fraud, in violation of 7 U.S.C. § 2024(b) and (c), as set forth in this indictment, the defendants shall forfeit to the United States of America all property, real and personal, used in a transaction or attempted transaction, to commit, or to facilitate the commission of, such violation, or proceeds traceable to such violation. The property to be forfeited includes, but is not limited to, the following:

- A MONEY JUDGMENT equal to the value of proceeds traceable to such offense and any property, real or personal, used to facilitate the commission of such offense.

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of conspiracy to commit Supplemental Nutrition Assistance Program Benefits fraud, in violation of 7 U.S.C. § 2024(b), involving a quantity of benefits having a value of not less than $5,000, as set forth in this indictment, the defendants shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to such violation or a conspiracy to commit such offense. The property to be forfeited includes, but is not limited to, the following:

- A MONEY JUDGMENT equal to the value of proceeds traceable to such offenses.

Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of any offense in violation of 18 U.S.C. § 1956(h), as set forth in this indictment, the defendants shall forfeit to the United States of America any property, real or personal, involved in such offenses, and any property traceable to such property. The property to be forfeited includes, but is not limited to the following:

- A MONEY JUDGMENT equal to the value of all property involved in the money laundering.

If more than one defendant is convicted of an offense, the defendants so convicted shall be jointly and severally liable for the forfeiture related to such offense.

### SUBSTITUTE ASSETS

If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s),

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the above-forfeitable property.

A TRUE BILL:

_____
FOREPERSON OF THE GRAND JURY

JOHN W. HUBER
United States Attorney

_____
ROBERT A. LUND
Assistant United States Attorney
JASON R. BURT
Assistant United States Attorney
TYLER L. MURRAY
Assistant United States Attorney
BROCK R. BELNAP
Special Assistant United States Attorney