JOHN W. HUBER, United States Attorney (#7226)
ROBERT A. LUND, Assistant United States Attorney (#9579)
JASON R. BURT, Assistant United States Attorney (#11200)
TYLER L. MURRAY, Assistant United States Attorney (#10308)
BROCK R. BELNAP, Special Assistant United States Attorney (#6179)
Attorneys for the United States of America
185 South State Street, Ste. 300 • Salt Lake City, Utah 84111
Telephone:   (801) 325-3285 • Facsimile:   (801) 325-3387

---

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          vs.<br><br>LYLE STEED JEFFS,<br>SETH STEED JEFFS,<br>JOHN CLIFTON WAYMAN,<br>KIMBALL DEE BARLOW,<br>NEPHI STEED ALLRED,<br>WINFORD JOHNSON BARLOW,<br>RULON MORMON BARLOW,<br>RUTH PEINE BARLOW,<br>HYRUM BYGNAL DUTSON,<br>KRISTAL MELDRUM DUTSON, and<br>PRESTON YATES BARLOW,<br><br>                    Defendants. | Case No. 2:16-CR-82-TS<br><br><br>GOVERNMENT'S MOTION FOR<br>DETENTION AND CONDITIONS OF<br>RELEASE<br><br><br><br><br><br><br>District Judge Ted Stewart<br>Magistrate Judge Robert T. Braithwaite |

          Due to the unusual background and actions of these defendants, they are likely to present a

flight risk. Therefore, the United States moves the Court to detain or impose conditions of pretrial

release for each of the defendants as outlined herein.

## I.   <u>LEGAL STANDARD AND BURDEN OF PROOF</u>

When a case involves a serious risk that a defendant will flee or attempt to obstruct justice, the Bail Reform Act of 1984 provides that "a judicial officer shall hold a hearing to determine whether any condition of or combination of conditions … will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). If after a hearing, the Court "finds that no conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). In determining whether there are no conditions that will reasonably assure the defendant's appearance, the judicial officer shall "take into account the available information concerning—(1) the nature and circumstance of the offense charge…; (2) the weight of the evidence against the person; (3) the history and characteristics of the person…; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release…." 18 U.S.C. § 3142(g).

The government must prove a serious risk of flight by "a preponderance of the evidence."[1] *United States v. Cisneros*, 328 F.3d 610, 613 (10th Cir. 2003) (sustaining the district court's determination that "the government had proved by a preponderance of the evidence that Cisneros posed a serious risk of flight such that no conditions of release would reasonably assure Cisnero's presence at trial.").

"The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the detention hearing." 18 U.S.C. § 3142(f).

---

[1] However, if the government seeks to detain a defendant based upon danger to the community, the Government's burden of proof is clear and convincing evidence. 18 U.S.C. § 3142(f).

Consequently, the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D. C. Cir 1996) ("Every circuit to have considered the matter … [has] permitted the Government to proceed by way of proffer.").

## II.    FACTUAL BACKGROUND AND VIOLATIONS

On February 17, 2016, a grand jury indicted the defendants for Conspiracy to Commit Supplemental Nutrition Assistance Benefits Fraud and Conspiracy to Commit Money Laundering. The indictment alleges the defendants implemented and maintained a scheme to divert money from authorized SNAP benefit recipients to leaders of the conspiracy for use by ineligible beneficiaries and for unapproved purposes. If convicted, the defendants face a maximum penalty of approximately twenty-five years in prison. 18 U.S.C. § 371 and 18 U.S.C. § 1956(h).

The defendants are top leaders of the Fundamental Church of Jesus Christ of Latter Day Saints (FLDS). The indictment alleges that these defendants have utilized their control of the FLDS church organization, assets, and members in order to commit crimes. Therefore, even though the FLDS church itself is not a target of the indictment, FLDS church operations and practices are implicated in the conspiracy.

## III.    FLIGHT RISK

FLDS leaders have developed an elaborate system for moving and hiding members of the group in order to avoid law enforcement detection.[2]  The system includes a network of homes and apartments known as "houses of hiding" as well as larger compounds known as "places of

---

[2]  Exhibit 1 (a witness who served as Warren Jeffs' personal assistant told investigators that houses of hiding were used to hide individuals from law enforcement); Exhibit 2 (Lyle Jeffs' son told investigators that Lyle Jeffs and other priesthood leaders use the houses of hiding to prevent themselves from being served court process and found by law enforcement).

refuge."[3]  The system includes locations throughout the United States,[4] western Canada,[5] Mexico and South America.[6]  These "places of refuge" are closed to outsiders, gated, and monitored.[7] Smaller "houses of hiding" are located in a variety of cities, and others are in remote locations.[8]

People in the system use pre-paid cellular telephones to route calls through multiple devices so that individuals' locations cannot be identified.[9]  The system also includes a secure internet protocol phone system to provide confidential communication.[10]

To facilitate undetected travel, people use vehicles leased or owned by others.[11]  People in the system use aliases[12], disguises[13], and false identification documents.[14]  Participants in the system use cash and prepaid debit cards to avoid detection.[15]

---

[3] Exhibit 3 (excerpts from a document titled "Training Given by President Warren S. Jeffs On the Places of Refuge to a Group of Men").

[4] Exhibit 25 (investigators are aware of "places of refuge" in South Dakota, Colorado, Oregon and Texas).

[5] Exhibit 4 (Warren Jeffs letter referring to a house of hiding in Canada and cautioning about taking certain items "across the border").

[6] Statement of FBI Special Agent Gary W. France; Exhibit 5 (Lyle Jeffs' former wife Charene Jeffs told investigators that Lyle Jeffs maintains a ranch in South America that is not known of by many FLDS members).

[7] Exhibit 6 (a witness told investigators that one place of refuge had a 24 hour manned watchtower with cameras monitoring the compound and switches for gates).

[8] Investigators have identified houses of hiding in Las Vegas, Nevada and San Angelo, Texas, as well as one described as "a remote timbered wilderness area about 12 hours drives from S—'s other place and 25 mountain miles from the nearest small settlement." See Exhibit 7.

[9] Exhibit 1 (Roy Jeffs told investigators that he coordinated communications among top leaders and that they had implemented a system designed to frustrate law enforcement's ability to identify the leaders or their locations. Roy Jeffs said he "went through hundreds of phones over several years" and that after a few days use, the phones were "smashed into little pieces and discarded." Roy Jeffs said that Warren Jeffs told him to do this "so law enforcement could not recover these phones and download their memory.").

[10] Exhibit 6.

[11] Exhibit 8 (Nephi Allred asked Warren Jeffs whether paperwork for a new Yukon for a place of refuge should be put "in a made up business name"); Exhibit 9 (Warren Jeffs was arrested in Cadillac Escalade belonging to John Wayman); Exhibit 10 (former Colorado City chief of police Helaman Barlow told investigators that while Lyle Jeffs was in hiding and living in the Las Vegas, Nevada area, he used a freightliner RV registered under the alias John Gibbs).

[12] Exhibit 10 (Lyle Jeffs used alias of John Gibbs); Exhibit 11 (Warren Jeffs used alias of John Findley).

[13] Exhibit 1 (Roy Allred told investigators that leaders use sunglasses, wigs, and "dressing down" as concealment when fleeing law enforcement); Exhibit 12 (former driver of Warren Jeffs told investigators that as the driver became more familiar with hiding and using disguises, Warren Jeffs extended more trust); Exhibit 13 (at the time of Seth Jeffs' arrest for aiding Warren Jeffs' flight from prosecution, investigators found pictures and a video labeled "In Hiding" that depict Seth Jeffs with a mustache and goatee, dressed in a Corona cap, Houston Texans shirt, and blue jeans).

[14] Exhibit 5 (Lyle Jeffs' former wife told investigators the process used by several individuals to get false

This system of houses of hiding and places of refuge was originally developed to protect Warren Jeffs from prosecution.[16]  In a training given to a group of FLDS leaders who had been sworn to secrecy, Warren Jeffs explained that the government was engaged in a conspiracy that involved "passing of these laws, to call us criminals by performing marriages, so-called 'under-age marriages…"[17]  Warren Jeffs told his followers that "[t]hese laws were passed for the purpose of putting me in prison so I could not fulfill what the Lord directed."[18]  But, Warren Jeffs announced a policy of defying laws that conflict with his view of the laws of God: "I say to you brethren, **no person, no court, no government, no people on the face of the whole earth has the right or authority to bring God into question what he has His Prophets do**…."(emphasis in original).[19]

Warren Jeffs' followers consider him to be a prophet who speaks for God on earth. Warren's brother Lyle Jeffs enforces Warren's directives while Warren is in prison.

Warren Jeffs' top leaders and followers are absolutely loyal – either because of genuine devotion, or because of the extraordinary control Warren Jeffs and Lyle Jeffs exercise over their lives.[20] People who get cross-wise with Warren Jeffs or his brother Lyle Jeffs are afraid they will lose their families, their spouses, and their children.[21]  They may lose their homes, their jobs, their income and support. And, they fear they will lose their eternal salvation.[22]

---

identification documents at the direction of FLDS leadership).
[15]  Exhibit 9 (when Warren Jeffs was arrested, FBI agents found $58,701 in cash along with twenty prepaid visa debit gift cards totaling $10,000); Exhibits 14 and 15 p. 114 (to avoid tracing of sequential bills by the FBI, Lyle Jeffs sent sequential bills back to the bank or laundered them at casinos).
[16]  Exhibit 3.
[17]  Id. at p. 25.
[18]  Id. at p. 29.
[19]  Id. at 29-30.
[20]  Exhibit 16.
[21]  Id. and Exhibit 17 (a witness told investigators he was threatened by a representative of the FLDS Church who told him he would never see his family again if he testified against the FLDS church).
[22]  Exhibit 16.

Even though Warren Jeffs has been incarcerated since 2007, FLDS leaders continue to devote enormous resources to maintaining the system of houses of hiding and places of refuge. Proceeds from the SNAP fraud conspiracy are used to support and maintain the system by providing food and resources to people in the system.[23]

### IV.   NO CONDITIONS OF RELEASE WILL REASONABLY ASSURE THE APPEARANCE OF THESE DEFENDANTS.

In light of their views regarding the authority of government, it is reasonable to conclude that given the opportunity, these defendants would avail themselves of the system specifically designed to avoid prosecution and evade detection.

In determining whether there are conditions of release that will reasonably assure the appearance of the defendants, the law requires the Court to "take into account the available information concerning—(1) the nature and circumstance of the offense charge…; (2) the weight of the evidence against the person; (3) the history and characteristics of the person…; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release…." 18 U.S.C. § 3142(g).

### A.  The Nature and Circumstances of the Offense

The defendants are charged with Conspiracy to Commit Supplemental Nutrition Assistance Benefits Fraud and Conspiracy to Commit Money Laundering. The indictment alleges the defendants implemented and maintained a scheme to divert money from authorized SNAP benefit recipients to leaders of the conspiracy for use by ineligible beneficiaries and for

---

[23] Exhibit 18; Exhibit 15, pp. 147-148.

unapproved purposes. The amount of money alleged to have been diverted and laundered in the SNAP fraud conspiracy exceeds twelve million dollars.

The circumstances of the offense involve a sophisticated and coordinated plan that engages hundreds of people in a scheme of deception. The conspiracy takes money for food from people it was intended to sustain and converts it into funds used by their leaders to further illegal activities, including maintaining the system of houses of hiding and places of refuge.[24] Because the funds for food are diverted to other purposes, hundreds of people – especially those disfavored by the elites – lack sufficient food.[25] Thus, the conspiracy has a direct impact upon the people the SNAP program was designed to benefit.

### B.  The Weight of the Evidence Against Defendants

Among the information the Court has available are the affidavits filed in support of the search warrants. Those affidavits set forth in significant detail a large amount of the evidence available in this case. That evidence is substantial.

### C.  The History and Characteristics of the Defendants

This factor requires the Court to consider characteristics such as "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(a). The section will address several of the defendants individually.

---

[24] Exhibit 18 (a witness told investigators that FLDS members are forbidden to use social services or take public assistance while they are living in lands of refuge).
[25] Exhibit 19 (a witness who gave her SNAP benefit card to the FLDS leaders told investigators that for most members, shopping at the FLDS Storehouse was "humiliating;" that while at times canned goods were available, meat and vegetables were almost impossible to get and her children "lived off toast").

## <u>Lyle Steed Jeffs</u>

Lyle Steed Jeffs is the Bishop of Short Creek and Warren Jeffs' brother. As the Bishop of Short Creek, Lyle is the highest ranking FLDS official besides Warren Jeffs. According to witnesses, Lyle Jeffs runs every aspect of the lives of members of the FLDS church.[26] Although Lyle Jeffs oversees the operations of the Bishop's Storehouse and manages the network of houses of hiding and places of refuge, he claims that Warren Jeffs directs everything.[27]

According to FBI investigators and witnesses, Lyle Jeffs:

- Failed to report incidents of underage sex abuse;[28]

- Has an escape plan using decoys and multiple vehicles to avoid apprehension;[29]

- Uses aliases, including John Gibbs;[30]

- Lived in a motorhome and traveled regularly to avoid discovery;[31]

- Facilitated the smuggling of audio recordings of Warren Jeffs out of prison;[32]

- Used an ATV and camouflage to avoid service of process of an FBI subpoena;[33]

- Encouraged men facing criminal warrants for underage marriage to avoid service of process;[34]

- Facilitated hiding a grand jury witness from the FBI;[35]

---

[26] See Exhibit 16.
[27] Exhibit 15 at p. 173. (Lyle Jeffs' former wife said "Lyle has told me many time that Warren is the one running the show").
[28] Prison Audio Recording dated March 14, 2015
[29] Exhibit 2.
[30] Exhibit 10.
[31] Exhibit 15 p. 47-48.
[32] Exhibit 15 p. 194.
[33] Exhibit 20.
[34] Exhibit 21.
[35] Exhibit 1.

- Selected women and girls to be removed to a place of refuge to undergo sex related training;[36]

- Traveled in disguise;[37]

- Coached family members on how to deceive without feeling like they told a lie;[38]

- Traveled with armed body guards;[39]

- Used code words to hide his location;[40]

- Has access to large amounts of cash;[41]

- Has multiple wives and family members dispersed in various houses of hiding or places of refuge;[42]

- Owns a ranch in South America that many FLDS people do not know exists.[43]

A confidential source told FBI investigators that Lyle Jeffs has no control over Warren Jeffs and is afraid of him because people monitor Lyle's actions for Warren and Lyle is afraid of being sent away and never being able to see his family.[44]

According to Lyle Jeffs' former wife, followers of Warren Jeffs "will do anything for Lyle because loyalty is life, and that is so drilled into you that even my brain is whack [sic] because of it. But that's the concept."[45]

---

[36] Exhibit 18.
[37] Exhibit 22 p 43.
[38] Exhibit 22 p. 97.
[39] Exhibit 22 p. 99.
[40] Exhibit 19.
[41] Exhibit 2.
[42] Exhibit 15 p. 32-33; Exhibit 2.
[43] Exhibit 5.
[44] Exhibit 23.
[45] Exhibit 15 p 81.

### Seth Steed Jeffs

Seth Steed Jeffs is Warren Jeffs' brother and the Bishop of the South Dakota congregation of the FLDS church. He is a trusted confidant and advisor to Warren Jeffs and Lyle Jeffs. Seth Jeffs pled guilty to harboring fugitive Warren Jeffs from arrest in 2006.[46] When Seth Jeffs was arrested, he was found with large amounts of cash and photos labeled "In Hiding." The photos showed him wearing a disguise.[47] Seth Jeffs travelled to houses of hiding and lands of refuge where he set up Internet Protocol phone systems to be used for secure communications.[48] At Warren Jeffs' direction, Seth Jeffs retrieved a computer used by FLDS defense lawyers and broke it into pieces because Warren Jeffs did not want people to have access to the incriminating information.[49] Seth Jeffs also developed a system to allow FLDS leaders to communicate without a record of the communication being recorded. The process involved "dirty phones" that had to be changed out every so often.[50]

### John Clifton Wayman

John Clifton Wayman is the former Bishop of Short Creek. John Wayman facilitated Warren Jeff's flight from justice by providing the vehicle Warren Jeffs was traveling in when he was arrested.[51] Wayman was a confidant of Warren Jeffs, trusted to respond to legal matters and resolve tax issues with the government.[52] When John Wayman goes out in public, he goes in disguise.[53]

---

[46] Exhibit 24 (Seth Jeffs' Plea Agreement).
[47] Exhibit 13 (investigators discovered approximately $140,000 in currency).
[48] Exhibit 6.
[49] *Id*.
[50] Exhibit 25.
[51] Exhibit 9.
[52] Exhibit 8.
[53] Exhibit 22 p. 97.

**Nephi Steed Allred**

Nephi Allred regularly travelled to and from Utah to places of hiding. He acted as a caretaker or courier during the time Warren Jeffs was wanted by law enforcement.[54] He helped relocate Warren Jeffs' wives.[55] Nephi Jeffs helped acquire a new car for one of the places of refuge and solicited Warren Jeffs' input regarding whether the paperwork should be put in a "made up business name."[56] Nephi Allred facilitated telephone management with people in houses of hiding and acquired gift cards and radios for houses of hiding as directed by Warren Jeffs.[57] Nephi Allred is a key was a key player in moving funds around for Warren Jeffs and the FLDS church. Nephi Allred is very gifted at accounting and setting up corporations and has used his business accounts to move around a lot of money for Warren Jeffs.[58]

**Kimball Dee Barlow, Winford Johnson Barlow, Rulon Mormon Barlow, Ruth Peine Barlow, Hyrum Bygnal Dutson, Kristal Meldrum Dustson, and Preston Yates Barlow**

Each of these defendants is a loyal follower of Warren Jeffs entrusted to participate in a scheme they know to be illegal. They have sworn to uphold Warren Jeffs' directives. Given that disloyalty is met with swift consequences, the Court can infer that these defendants will continue to willingly follow the direction of Lyle Jeffs and Warren Jeffs. Therefore, the Government requests that the Court impose strict pretrial release conditions upon this group of defendants pursuant to 18 U.S.C. § 3142(B).

---

[54] Exhibit 12.
[55] *Id.*
[56] Exhibit 8.
[57] Exhibit 26.
[58] Exhibit 25.

### D.  Danger to the Community

In the context of a pretrial detention hearing determination, "Congress intended that the concern about safety be given a broader construction than merely danger of harm involving physical violence." *United States v. Acevedo-Ramos,* 600 F. Supp. 501 (D.C. Puerto Rico 1984); affirmed 755 F.2d 203 (1st Cir. 1985). The danger presented by these defendants includes the continued misdirection of food from people who need it as well as the ongoing support of a system designed to conceal and perpetuate illegal conduct.

Even if defendants or witnesses would otherwise voluntarily choose to appear, FLDS leaders have used houses of hiding to conceal people against their will. When one woman in a house of hiding got "sick of it" and tried to escape on foot, an FLDS caretaker found her and told her "You don't realize what you are doing to us. If the feds found out that we have you here, this is wrong. You can't do this anymore to us."[59] Other witnesses described houses of hiding as "houses of hostage" and said that bedrooms all had locks on the outside of doors.[60] Another witness told investigators that while in a house of hiding, she was not allowed to leave unattended and could only make calls to designated pre-programmed phone numbers.[61]

Additionally, FLDS leaders have destroyed evidence. For example, Warren Jeffs directed Seth Jeffs to break a computer into pieces because of incriminating information it contained against Warren Jeffs.[62]  Warren Jeffs instructed others to smash phones into little pieces so that law enforcement could not recover the phones and download their memory.[63]

---

[59] Exhibit 15 p. 198.
[60] Exhibit 27.
[61] Statement of Washington County Sheriff's Detective Aaron Thompson
[62] Exhibit 6.
[63] Exhibit 1.

Given the elaborate system of concealment and obstruction available to these defendants, there is a serious risk that they will flee or facilitate the disappearance of other witnesses and evidence.

### E.  Insufficiency of An Appearance Bond

Conditioning the defendants' release on the posting of an appearance bond will not reasonably assure their appearance at trial.

FLDS leaders have access to large amounts of cash but their personal net worth is unknown. FLDS leaders have previously shown a willingness to forfeit valuable property rather than appear and defend themselves. For example, a former member foreclosed on FLDS property valued at 3.6 million dollars after Lyle Jeffs and John Wayman refused to defend a lawsuit.[64] FLDS leaders abandoned assets in Utah and Arizona valued at more than one-hundred million dollars rather than appear in court to defend their actions as trustees of the United Effort Plan. In the State of Texas, FLDS leaders abandoned property appraised at 33.4 million dollars rather than defend allegations the property was used for illegal purposes.[65]

Thus, while it is possible that these defendants could raise funds to post appearance bonds, they may have no personal stake in the potential loss of the money. Therefore, the risk of losing large sums of money will not deter these defendants should they choose to flee. *See United States v. Geerts*, 629 F.Supp 830, 832 (E.D. Penn. 1985) (noting that because the source of the defendant's bond money and his net worth were unknown, "the amount of bail necessary to assure his appearance is also unknown.").

---

[64] Exhibit 28, Exhibit 29.
[65] Exhibit 30.

## CONCLUSION

The Court should order Lyle Steed Jeffs, Seth Steed Jeffs, John Clifton Wayman, and Nephi Steed Allred detained pending trial because there are no conditions that will reasonably assure their appearance as required. The government has shown by a preponderance of the evidence that these defendants are a flight risk due to their access to a system designed to evade detection and avoid prosecution. Their participation in the conspiracy to commit SNAP fraud and launder money demonstrates that they are loyal to and work to further Warren Jeffs' declaration that no court or government can tell them what to do.

The Court should further order strict conditions of pretrial release upon the remaining defendants.

Respectfully submitted this 23th day of February, 2016.

JOHN W. HUBER
United States Attorney

*/s/ Robert A. Lund*
ROBERT A. LUND
JASON R. BURT
TYLER L. MURRAY
Assistant United States Attorneys
BROCK R. BELNAP
Special Assistant United States Attorney