IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>v.<br><br>LYLE STEED JEFFS,<br><br>            Defendant. | MEMORANDUM DECISION AND ORDER DETAINING DEFENDANT<br><br><br>Case No. 2:16-CR-82 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant's Motion for Review of Detention by District Court. The Court conducted a hearing on Defendant's Motion on April 6, 2016. For the reasons discussed below, the Court orders Defendant detained pending trial.

I.  BACKGROUND

Defendant, along with ten others, is charged in an Indictment with conspiracy to commit Supplemental Nutrition Assistance Program ("SNAP") benefits fraud and conspiracy to commit money laundering.[1] The government sought detention.[2] The Magistrate Judge conducted a detention hearing on March 7, 2016, after which Defendant was ordered detained.[3] Defendant now seeks review of that detention order.[4]

---

[1] Docket No. 1.

[2] Docket No. 6.

[3] Docket No. 95.

[4] Docket No. 103.

1

## II. DISCUSSION

The Court considers Defendant's request for a review of the Magistrate Judge's order of detention under 18 U.S.C. § 3145(b) and DUCrimR 57-16(a)(1). The Court conducts its own de novo review of the detention issue giving no deference to the Magistrate Judge's findings or conclusions.[5] In so doing, the Court may elect to start from scratch and take evidence and also may incorporate the record of the proceedings conducted by the Magistrate Judge, including any exhibits.[6]

In making its determination, this Court, like the Magistrate Judge, is governed by the standards set forth in 18 U.S.C. § 3142. Under that statute, an accused is ordinarily entitled to pretrial release, with or without conditions, unless the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and community."[7] The government must prove risk of flight by a preponderance of the evidence and it must prove dangerousness to any other person or to the community by clear and convincing evidence.[8]

To determine whether there are conditions of release that will reasonably assure the appearance of Defendant and the safety of any other person and the community, this Court considers the following factors:

---

[5] DUCrimR 57-16(a)(1) (providing for de novo review of detention orders); *United States v. Lutz*, 207 F. Supp. 2d 1247, 1251 (D. Kan. 2002); *see also United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003) (holding that district court's review under §3145(a) is de novo).

[6] *Lutz*, 207 F. Supp. 2d at 1251.

[7] 18 U.S.C. § 3142(b), (c), and (e).

[8] *Cisneros*, 328 F.3d at 616.

> (1) The nature and circumstances of the offense charged, including whether the offense . . . ;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .[9]

A.  NATURE AND CIRCUMSTANCES OF THE OFFENSE

The Indictment alleges that Defendant is the bishop of the Fundamentalist Church of Latter-day Saints ("FLDS") in Colorado City, Arizona and Hildale, Utah (collectively, "Short Creek"). In approximately 2011, Defendant and other FLDS leaders instituted the "United Order." Participants in the United Order are required to donate their material possessions to the FLDS Storehouse, a communal clearinghouse charged with collecting and disbursing commodities to the community. United Order participants are required to obtain their food and household items through the FLDS Storehouse.

Many members of the FLDS community in Short Creek receive SNAP benefits, consisting of millions of dollars in benefits per year. FLDS leaders, including Defendant, allegedly directed members to divert their SNAP benefits to the FLDS Storehouse. In some cases, items were purchased from stores and donated to the Storehouse. Those items were then provided to the Short Creek community without regard to eligibility to receive SNAP benefits. In other cases, people swiped their cards without receiving any products and those funds were

---

[9] 18 U.S.C. § 3142(g).

commingled and used for purposes unrelated to SNAP.  Funds were then diverted to companies acting as a front for the FLDS Storehouse.  FLDS leaders, including Defendant, allegedly directed the use of those funds for purposes other than the purchase of eligible food products for authorized recipients.  The Court considers this to be a serious offense.

The Court recognizes that this offense does not carry a presumption of detention and that allegations of welfare fraud would not generally result in detention.  However, the Court must also acknowledge the large scale of the alleged conspiracy and its impact on the community.  The evidence shows that while this diversion was occurring, the FLDS Storehouse was not well stocked, making subsistence difficult for average community members.[10]  Thus, the evidence suggests that not only were Defendants defrauding the government and the taxpayers, many individuals were not receiving the benefits to which they were entitled.

Defendant argues that the resulting harm may not have been intended by Defendants and may be attributable to other factors.  Defendant further argues that the Court should not consider the human impact of Defendants' conduct.  While the Court recognizes these arguments, the Court nevertheless believes that the impact of Defendants' conduct falls within the factors to be considered in determining detention.  Though the shortages at the FLDS Storehouse may not have been intended and may be partially attributable to other causes, no one appears to dispute the real hardships suffered by many individuals in Short Creek.  Based upon all of the above, the Court finds that this factor weighs in favor of detention, though only slightly.

---

[10] Docket No. 6 Exs. 19, 27.

B.	WEIGHT OF THE EVIDENCE

The weight of the evidence against Defendant is significant. The Indictment constitutes probable cause that Defendant participated in the acts alleged.[11] The allegations in the Indictment are supported by the evidence submitted by the government in support of detention. That evidence demonstrates that Defendant, as the bishop of Short Creek, provided training on how members were to use their food stamps.[12] Defendant is correct that much of the government's evidence is based upon Defendant's leadership role. However, because of his leadership role, it is reasonable to infer that Defendant was intimately involved in the development and implementation of the alleged scheme. As will be discussed, many individuals have provided statements discussing the control Defendant has over those in the community. Therefore, this factor weighs in favor of detention.

C.	HISTORY AND CHARACTERISTICS OF DEFENDANT

Defendant is the brother of Warren Jeffs and is the presiding bishop of the FLDS church in Short Creek. As is detailed in the government's exhibits, the FLDS church has used an elaborate system to conceal its members from law enforcement. While it would be improper to order detention simply because of Defendant's religious beliefs or his association with other members of the FLDS church, the Court cannot simply ignore this evidence.

In his role as bishop, Defendant Jeffs oversees many of the daily affairs of the FLDS church. Several witnesses have stated that Defendant Jeffs exercises considerable control over

---

[11] *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991).

[12] Docket No. 6 Ex. 19.

the people and businesses in Short Creek.[13] It is asserted that Defendant can tell people what to do and they will follow Defendant's directions or risk serious consequences. As one witness stated: "When someone gets cross-wise with LYLE, the following consequences could result: financial, with regard to employment; personal, with regard to family ties and social relationships; spiritual, with their standing in the church and their ability to get back to heaven."[14]

Perhaps more important than Defendant's leadership role in the FLDS church are his own efforts to evade law enforcement, avoid detection, and assist others in doing the same. There is significant evidence that Defendant has attempted to evade formal process. Several witnesses recounted a dramatic escape by Defendant in an apparent attempt to avoid being served with subpoenas by the FBI.[15] Defendant's own written statement to Warren Jeffs confirms that he was able to successfully escape from the FBI.[16] Defendant argues that his purported attempts to avoid civil process are not grounds for detention.[17] The Court disagrees. If Defendant was willing to go to such lengths to avoid civil process, it stands to reason that he would take even greater measures to avoid this criminal prosecution, where he could face substantial penalties.

In addition to his own efforts to avoid process, there is evidence that Defendant has assisted others in avoiding or interfering with legal process. Defendant allegedly encouraged

---

[13] *Id.* Exs. 2, 16, 23.

[14] *Id.* Ex. 16.

[15] *Id.* Exs. 2, 15; Docket No. 85 Ex. 74, 75; *see also* Docket No. 6 Ex. 20.

[16] Docket No. 85 Ex. 63.

[17] It is not clear that the incident described related only to civil proceedings.

individuals facing warrants to avoid service of process.[18] Defendant also allegedly told people who were to be served with subpoenas to get out of town, instructing these men to take certain measures to avoid being discovered.[19] Further, Warren Jeffs directed Defendant to tell people who were under threat of criminal charges to "stay out of the way a little longer while we see what happens."[20] Additionally, Defendant allegedly told his son that he would help repay a debt if his son helped quash subpoenas that had recently been served on Defendant.[21]

There is also evidence that Defendant has attempted to avoid law enforcement detection by using an alias[22] and going into hiding.[23] One witness stated that Defendant's "location was normally kept confidential from other church members."[24] Another witness stated that Defendant traveled from place to place in a motorhome that was not known to many others.[25] Defendant is also alleged to have used multiple vehicles and decoys to remain anonymous.[26] There is further evidence to suggest that Defendant has been protected by armed body guards who carry concealed weapons[27] and are willing to take extreme efforts to protect him.[28]

---

[18] Docket No. 6 Ex. 21.

[19] Docket No. 85 Ex. 74.

[20] *Id.* Ex. 59.

[21] Docket No. 6 Ex. 2.

[22] *Id.* Exs. 2, 10, 15.

[23] *Id.* Exs. 2, 10, 19; Docket No. 85 Ex. 74.

[24] Docket No. 6, Ex. 19.

[25] *Id.* Ex. 15; *see also* Docket No. 85 Ex. 65 ("And Lyle is in place alone in a motorhome, ready to go where I direct, to do the transfer of my letters and other things he has for us.").

[26] Docket No. 6 Ex. 2.

[27] *Id.* Ex. 22.

[28] *Id.* Ex. 2. The Court is not suggesting that these "bodyguards might face law enforcement in an Armageddon type standoff," as argued by Defendant. Docket No. 166, at 10.

In addition to all of the above, there is substantial evidence that Defendant provided significant assistance to Warren Jeffs while Jeffs was a fugitive. The evidence shows that Defendant acted as a courier and provided hundreds of thousands of dollars to the fugitive Jeffs, no doubt prolonging his flight from justice. While this information is dated, the fact that Defendant Lyle Jeffs was so willing to assist Jeffs in evading capture provides compelling evidence that he himself is a flight risk. All of this evidence weighs strongly in favor of detention.

The Court is cognizant of the fact that there is evidence in support of release. Defendant is a 56-year-old man with no prior criminal history. He has no history of drug or alcohol abuse, and has strong ties to the community. In a risk assessment prepared by the Probation Office, Defendant was found to present a low-risk of flight. Additionally, Defendant has also recently complied with civil court proceedings, including attending court proceedings. While in many cases these facts would dictate in favor of release, in this instance, they do not outweigh the substantial evidence set forth above demonstrating that Defendant is a risk of flight.

D. NATURE AND SERIOUSNESS OF THE DANGER TO ANY PERSON OR THE COMMUNITY IF RELEASED

Finally, the Court must consider the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release. As stated, Defendant is the highest ranking member of the FLDS community in Short Creek and directly controls many aspects of day-to-day life. Based on the information presented by the government at the hearing, it appears

---

Defendant's alleged used of armed body guards is nonetheless relevant to the Court's determination.

that Defendant's role in this regard has continued while in custody.[29] Several witnesses have stated that Defendant exercises considerable control over the people and businesses in Short Creek and that there are serious consequences for those that disobey him. The Court is gravely concerned that Defendant would use this influence to intimidate witnesses and obstruct justice.

The Court is also concerned Defendant would follow the instruction of Warren Jeffs to either flee or obstruct justice. Defendant argues that it is speculative to believe that Defendant would follow the instructions of Warren Jeffs. However, the evidence shows that Defendant repeatedly followed the direction of Warren Jeffs in the past.[30] Defendant further argues that Warren Jeffs' ability to communicate to Defendant and others in Short Creek is limited. However, the exhibits presented at the hearing demonstrate that Warren Jeffs is able to easily communicate his message and that Defendant assists him in doing so.[31] Thus, not only does it appear that Warren Jeffs has the ability to communicate messages to Defendant, based on Defendant's prior conduct, the Court believes that Defendant would follow that direction. Therefore, this factor weighs in favor of detention.

### III. CONCLUSION

Based upon the above, the Court finds that there are no conditions that will reasonably assure the appearance of Defendant. Therefore, Defendant will be detained pending trial.

---

[29] Hr'g Ex. 123.

[30] Docket No. 85 Exs. 57, 58, 60, 65.

[31] *Id.* Exs. 117, 118.

DATED this 7th day of April, 2016.

BY THE COURT:

_____
Ted Stewart
United States District Judge