IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                     Plaintiff,<br><br>v.<br><br>LYLE STEED JEFFS,<br><br>                     Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JURY INSTRUCTION REGARDING PERMISSIBLE USE OF SNAP BENEFITS<br><br>Case No. 2:16-CR-82 TS<br><br>District Judge Ted Stewart |

       This matter is before the Court on the government's Motion for Jury Instruction Regarding Permissible Use of SNAP Benefits. For the reasons discussed below, the Court will grant the Motion in part and deny it in part. The Court agrees that it must instruct the jury on the permissible use of SNAP benefits, but will not use the government's proposed jury instruction.

I. BACKGROUND

       Defendant is charged with, among other things, conspiring to violate 7 U.S.C. § 2024(b) and (c). These provisions make it unlawful to knowingly use, transfer, acquire, alter, or possess SNAP benefits "in any manner contrary to this chapter or the regulations issued pursuant to this chapter"[1] or to present, or cause to be presented, SNAP benefits for payment or redemption "knowing the same to have been received, transferred, or used in any manner in violation of the provisions of this chapter or the regulations issued pursuant to this chapter."[2]

---

[1] 7 U.S.C. § 2024(b).

[2] *Id.* § 2024(c).

The government previously moved in limine for "a ruling that would preclude the defendants from raising [the] argument that donation of their benefits was allowed or authorized by the law, and ruling that the jury should be instructed that the laws and regulations preclude the donation of SNAP benefits."[3] The government requested the Court make "a legal determination of what the law is, and then [allow] the parties [to] present evidence in the framework of the Court's instructions about the law."[4]

The Court rejected the government's request as overbroad. The Court identified two primary reasons for its denial. First, the Court believed that granting the government's request would implicate issues that are solely within the province of the jury. Second, the Court was concerned that exclusion of such evidence would interfere with Defendant's ability to argue that any violation was not done knowingly. The Court left open the possibility for the government to file a more narrowly tailored pretrial motion addressing the government's concern that such evidence would encroach on the role of either the jury or the Court. The government has now filed the instant Motion.

The government moves the Court to instruct the jury regarding the legal authorities governing the permissible use of SNAP benefits. Specifically, the government urges the Court to instruct the jury "that SNAP benefits must be used only by the authorized household to purchase eligible food for that household and that any other use of SNAP benefits, including the donation of benefits, is not authorized."[5]

---

[3] Docket No. 454, at 2.

[4] *Id.* at 4.

[5] Docket No. 840, at 1–2.

II. DISCUSSION

The government first argues that, because the Court is the sole arbiter of the law, it must determine the meaning of the SNAP statutes and regulations and instruct the jury accordingly. The Court agrees. "[I]t is axiomatic that the judge is the sole arbiter of the law and its applicability."[6] The Court has no intention of abandoning its duty to instruct the jury on the law and will not allow evidence or argument that would encroach on this role. The question of what is permitted by the SNAP statutes and regulations is a question of law. The Court will make that determination and will instruct the jury accordingly.

By so ruling, the Court does not intend to exclude all evidence concerning the permissible use of SNAP benefits. Federal Rule of Evidence 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." The Tenth Circuit recognizes "that a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible. Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms."[7] Thus, it is possible that either party could permissibly present expert testimony that touches on the authorized use of SNAP benefits. The Court need not decide in this Order the extent to which such testimony would be allowed. The Court will, however, exclude evidence that would seek to instruct the jury as to the law.[8] This result protects the functions of the Court and the jury while allowing the parties a full opportunity to present their cases.

---

[6] *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988).

[7] *Id.* at 809 (identifying examples of permissible expert testimony referencing the law).

[8] *Id.* at 810 ("In no instance can a witness be permitted to define the law of the case.").

3

The real question presented by the government's Motion is what the SNAP statutes and regulations allow. The government argues that SNAP benefits must be used only by the authorized household to purchase eligible food for that household and that any other use of SNAP benefits, including donation, is not authorized. The government's proposed jury instruction is as follows:

> SNAP benefits must be used only by the authorized household to purchase eligible food for that household. It is contrary to the law and USDA regulations for anyone to use them for any other purpose. The SNAP statutes and regulations need not specifically identify every prohibited use of SNAP benefits. Instead, it is sufficient for the statutes and regulations to identify the purposes for which SNAP benefits may be used. All other uses of SNAP benefits, including the donation of benefits, are not authorized.[9]

The parties focus their arguments on the donation of SNAP benefits and the Court will do the same. The Superseding Indictment contains allegations that Defendant conspired to violate the SNAP statutes in two primary ways: by directing FLDS members to divert their SNAP benefits directly without the exchange of food products and by directing members to donate food items purchased with SNAP benefits.[10] It is unclear whether the government's proposed instruction is directed to both types of conduct, but the Court will assume that it is.

For the reasons discussed below, the Court finds that the donation of SNAP benefits (i.e., the funds provided to a household on an EBT card)[11] without the exchange of food products is

---

[9] Docket No. 840, at 9.

[10] Docket No. 829 ¶ 11 ("Lyle Jeffs and other FLDS leaders directed members to divert their SNAP benefits to the church by purchasing food items at Meadowayne and Vermillion and physically transporting those items to the Storehouse for donation or by converting SNAP benefits directly to fungible assets by swiping EBT cards at Meadowayne or Vermillion without the exchange of any food products.").

[11] *See* 7 U.S.C. § 2012(d)(1) (defining "benefit" as "the value of supplemental nutrition assistance provided to a household by means of . . . an electronic benefit transfer").

prohibited by statute and regulations. SNAP benefits may only be used by the household to purchase eligible food for the household. Thus, the funds placed on the EBT card must be used to purchase eligible food for the household and any other use of those funds, including donation, is prohibited. However, there is no statute or regulation that would prohibit the donation of food items obtained through the use of SNAP benefits.

As stated, Section 2024(b) makes it unlawful to knowingly use, transfer, acquire, alter, or possess SNAP benefits "in any manner contrary to this chapter or the regulations issued pursuant to this chapter" and § 2024(c) makes it unlawful to present, or cause to be presented, SNAP benefits for payment or redemption "knowing the same to have been received, transferred, or used in any manner in violation of the provisions of this chapter or the regulations issued pursuant to this chapter." The law and regulations state that SNAP benefits may only be used by eligible individuals to purchase eligible food for that household.[12] From these provisions, it is clear that SNAP benefits must be used to purchase eligible food for the household. Other uses of the benefits, including the donation of benefits without an exchange of food, are not permitted. Thus, the jury may be instructed that the donation of benefits without the exchange of food items

---

[12] *Id.* § 2013(a) ("The benefits so received by such households shall be used only to purchase food from retail food stores which have been approved for participation in the supplemental nutrition assistance program."); *id.* § 2016(b) ("Benefits issued to eligible households shall be used by them only to purchase food from retail food stores which have been approved for participation in the supplemental nutrition assistance program at prices prevailing in such stores."); 7 C.F.R. § 274.7(a) ("Program benefits may be used only by the household . . . to purchase eligible food for the household . . . ."); *Id.* § 278.2(a) ("Coupons may be accepted by an authorized retail food store only from eligible households or the households' authorized representative, and only in exchange for eligible food.").

5

is contrary to law.[13]  However, the Court cannot conclude, based on those authorities, that the donation of food obtained through the use of SNAP benefits is not permitted.  Thus, the Court cannot agree with the government's instruction as written.

The government argues that its instruction is based on its interpretation of the plain language of the statutes and regulations.  However, the government points to no specific statutes or regulations that prohibit the donation of food obtained through the use of SNAP benefits.  Other conduct—such as selling SNAP benefits for cash, using benefits to purchase unauthorized items, purchasing products originally purchased with SNAP benefits in exchange for cash or consideration other than eligible food—has been specifically set out by regulation as being prohibited.[14]

The regulations defining trafficking are particularly instructive.  Those regulations set out very specific, and limited, conduct that is prohibited post-purchase.  For example, the regulations prohibit purchasing a product with SNAP benefits that has a container requiring a return deposit, discarding the product, and returning the container for the deposit amount.[15]  These regulations demonstrate that the USDA knows how to detail specific conduct that is not permitted.  The fact

---

[13] Tenth Circuit Pattern Instruction 2.01 provides support for the notion that it would be proper to instruct the jury that certain conduct is contrary to law.  That instruction states, in pertinent part: "It is contrary to the law and Department regulations for anyone [to sell or purchase] [food stamp coupons] [authorization cards] [access devices for cash] [to use, transfer, or acquire food stamp coupons, authorization cards, or access devices for non-food items, including, for example, clothes, drugs, cigarettes, or liquor]."  While this instruction does not include donation in its list of unauthorized conduct, it makes clear that the jury should be instructed on what the statutes and regulations prohibit.

[14] 7 C.F.R. § 278.2(a) (stating that coupons may be used "only in exchange for eligible food" and "may not be accepted in exchange for cash"); *see also id.* § 271.2 (defining "eligible food" and "trafficking").

[15] *Id.* § 271.2.

that there is no similar statute or regulation concerning the donation of food obtained from the use of SNAP benefits calls into doubt the government's interpretation.

The government points to the testimony of Jeffrey Cohen, USDA Deputy Associate Administrator for SNAP. While Mr. Cohen stated his belief that wholesale donation would run contrary to the purpose of the program, he acknowledged that there was no specific regulation prohibiting donation. Mr. Cohen could not point to any regulations, other than those prohibiting trafficking, that would dictate what SNAP recipients could do with food purchased with SNAP benefits post-purchase.[16]

The government also relies heavily on *United States v. Salazar*,[17] a case in which the Tenth Circuit rejected a vagueness challenge to § 2024(b). *Salazar* does not support the government's proposed instruction. In that case, the defendant purchased food stamps with cash on two separate occasions. The defendant challenged § 2024(b) as unconstitutionally vague. The Tenth Circuit rejected the argument, finding that "[t]he regulations provide a detailed description of the authorized means of acquiring food stamps."[18] Thus, "[t]he statute and regulations together give sufficient notice of the proscribed conduct and provide adequate standards for enforcement."[19] In support of this conclusion, the Tenth Circuit pointed to various regulations that specifically prohibited the exchange of food stamps for cash, except in limited circumstances not present in that case.[20] The government in that case also presented testimony

---

[16] Docket No. 661, at 115–17.
[17] 720 F.2d 1482 (10th Cir. 1983).
[18] *Id.* at 1485.
[19] *Id.*
[20] *Id.* at 1484 n.2.

7

consistent with those regulations.[21] Thus, in *Salazar*, the statutes, regulations, and testimonial evidence provided a definite statement that the defendant's conduct was not authorized. Here, however, there are no specific statutes or regulations addressing the donation of food obtained from the use of SNAP benefits. While the Tenth Circuit made it clear that § 2024(b) need not specifically delineate all conduct that is not authorized to avoid a vagueness challenge,[22] something more is required to support the government's proposed instruction. Further, unlike the cases relied upon by the government in its Motion, the government points to no legislative history or administrative guidance to support its interpretation.[23]

Without statutory or regulatory language, legislative history, or administrative guidance to support the government's position, the Court looks to whether the government's interpretation is compelled by the purpose of SNAP.[24] The purpose of SNAP is to "permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food

---

[21] *Id.*

[22] *Id.* at 1485 ("Defendant contends that to avoid this vagueness infirmity, the statute must specifically delineate what is prohibited. We know of no constitutional mandate for such a legislative drafting decision.").

[23] *United States v. Richter*, 796 F.3d 1173, 1182–88 (10th Cir. 2015) (considering the plain language of the regulations along with the regulatory context and purpose in evaluating jury instruction); *United States v. Overholt*, 307 F.3d 1231, 1240–43 (10th Cir. 2002) (evaluating "the natural reading of the language" of the regulations and rejecting the defendant's interpretation of the regulations because adopting that interpretation "would make them more permissive than the minimum requirements set by the EPA, which all state programs are obliged to satisfy"); *United States v. Weitzenhoff*, 35 F.3d 1275, 1288–89 (9th Cir. 1993) (considering the language of the permit, EPA regulations, EPA interpretation, and the purpose of the statutory scheme).

[24] *See Richter*, 796 F.3d 1186–88 (considering regulatory context and purpose to resolve ambiguity in regulations); *Weitzenhoff*, 35 F.3d at 1289 (rejecting defendant's interpretation because it would turn "the entire statutory scheme on its head").

purchasing power for all eligible households who apply for participation."[25] The Court agrees with the government that wholesale donation would certainly frustrate the goals of the program. However, there may be circumstances where the donation of food obtained through the use of SNAP benefits could further the purposes of the program or, at least, not frustrate them. During the evidentiary hearing on Defendant's motion to dismiss, Mr. Cohen was asked about a hypothetical situation where donating benefits would actually result in an eligible household getting more than they would have otherwise gotten through the pooling of resources. Though this is not apparently what occurred here, Mr. Cohen acknowledged that "there may be a case there."[26] Upon further questioning, Mr. Cohen conceded that the purpose of the program would be met if SNAP beneficiaries were able to get their donated food back after donation.[27] Further, there could be situations where donation would help alleviate hunger and nutrition of the recipient, thereby satisfying the program.[28] Based on this, the Court cannot conclude that donation of food obtained through the use of SNAP benefits, at least in all circumstances, would frustrate the purpose of the program.

Further, the government's interpretation, if taken to its logical limit, would lead to absurd results. While the government's instruction appears to be based on wholesale donation of benefits, under the government's interpretation a SNAP recipient could face criminal prosecution

---

[25] 7 U.S.C. § 2011.

[26] Docket No. 661, at 141.

[27] *Id.* at 161.

[28] 7 U.S.C. § 2011 ("To alleviate such hunger and malnutrition, a supplemental nutrition assistance program is herein authorized which will permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation.").

9

if they donated cookies to a school bake sale that were made from food obtained through the use of SNAP benefits. Similarly, a SNAP beneficiary could face federal charges if they donated excess food to their local food bank. The Court refuses to construe the statutes or regulations so broadly as to sweep in this type of innocent conduct.

Therefore, the Court rejects the government's proposed jury instruction. Instead, the Court will instruct the jury consistent with the law and regulations as they are written. The Court intends to provide the following instruction or something substantially similar:

> It is unlawful to use, transfer, acquire, alter, or possess SNAP benefits in any manner contrary to SNAP statutes and regulations. It is also unlawful to present, or cause to be presented, benefits for payment or redemption knowing the same to have been received, transferred, or used in any manner in violation of the SNAP statutes and regulations. Pursuant to SNAP statutes and regulations, SNAP benefits may only be used by the authorized household to purchase eligible food for that household.

The Court will entertain an additional instruction consistent with the ruling set forth above and will finalize this instruction, along with all other instructions, after considering the submissions of the parties.

III. CONCLUSION

It is therefore

ORDERED that the government's Motion for Jury Instruction Regarding Permissible Use of SNAP Benefits (Docket No. 840) is GRANTED IN PART AND DENIED IN PART as set forth above.

DATED this 23rd day of August, 2017.

BY THE COURT:

_____
Ted Stewart
United States District Judge